**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-14139-ALTMAN**

**ROLANDO DELLANO**,

     *Plaintiff,*

*v.*

**M. BIEM,** *et al.*,

     *Defendants.*

_____/

**<u>ORDER</u>**

Our Plaintiff, Rolando Dellano, is a state prisoner who has filed a second amended complaint under 42 U.S.C. § 1983. *See generally* Second Amended Complaint ("SAC") [ECF No. 16]. Dellano says that four officers at Martin Correctional Institution ("Martin C.I.")—Officer M. Biem, Officer B. Robinson, Sergeant J. Clayton, and Captain J. Binsse—violated his First and Eighth Amendment rights in the weeks after he reported that another inmate had sexually assaulted him. *See id.* at 4–10. Specifically, Dellano claims that Biem and Robinson beat him "without any provocation," that Clayton deprived him of food, that Binsse ordered Biem and Robinson to "withhold [Dellano's] blood[-]pressure medication," and that all four Defendants took these actions to "retaliat[e] against him" for filing a Prison Rape Elimination Act ("PREA") complaint. *Id.* at 9; *see also id.* at 4–9. Dellano seeks compensatory and punitive damages from each Defendant. *See id.* at 10.

After careful review, we find that Dellano's excessive-force, food-deprivation, medical-deliberate-indifference, and retaliation claims—including two supervisory-liability claims against Binsse—may **PROCEED** to service. But his failure-to-protect claims and the remaining supervisory-liability claims must be **DISMISSED** for failure to state a claim.

## THE LAW

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." 28 U.S.C. § 1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the complaint," when it is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

The Federal Rules of Civil Procedure require, in relevant part, that a well-pled complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Every pleading . . . must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." FED. R. CIV. P. 11(a). In this Court, a civil-rights complaint submitted by a *pro se* prisoner "must be signed under penalty of perjury." S.D. FLA. L.R. 88.2; *see also* FED. R. CIV. P. 11(a) ("*Unless a rule or statute specifically states otherwise*, a pleading need not be verified or accompanied by an affidavit." (emphasis added)). Additionally, "complaints must substantially follow the form, if any, prescribed by the Court." S.D. FLA. L.R. 88.2(a).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

The Court may not assist a *pro se* plaintiff in constructing "a theory of liability from facts never alleged, alluded to, or mentioned" in the complaint. *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011). Instead, "to prevail on a particular theory of liability, a party must present that argument to the district court." *Ibid.*; *see also GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party."), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## DISCUSSION

Liberally construed, Dellano's SAC advances six theories of liability: (1) Eighth Amendment excessive-force claims against Biem and Robinson, *see* SAC at 8; (2) an Eighth Amendment conditions-of-confinement claim against Clayton for depriving Dellano of food, *see id.* at 9; (3) Eighth Amendment deliberate-indifference claims against Biem and Robinson for withholding Dellano's prescribed blood-pressure medication, *see ibid.*; (4) Eighth Amendment failure-to-protect claims against all four Defendants, *see id.* at 4–9; (5) First Amendment retaliation claims against Biem, Robinson, and Clayton for retaliating against Dellano because he filed a PREA complaint, *ibid.*; and (6) supervisory-liability claims against Clayton and Binsse, *see ibid.* We address each theory in turn.

### I.      The Eighth Amendment Claims

#### a.      Excessive Force

We'll start with Dellano's claims that Biem and Robinson used excessive force in violation of the Eighth Amendment when they "began to beat [him] about his head and body, kicking and stomping [him]" while "utilizing their booted feet as weapons." SAC at 4–5. The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" on a convicted prisoner. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). To state an Eighth Amendment excessive-force claim, a prisoner must satisfy "two elements—one subjective and one objective": the defendant must have "acted with a sufficiently culpable state of mind," and his conduct

must have been "objectively harmful enough to establish a constitutional violation." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (cleaned up).

The objective element asks whether the force was "harmful enough" to violate the Constitution. *Id.* at 1265 (cleaned up). Of course, "[n]ot every push or shove" violates the Eighth Amendment. *Hudson*, 503 U.S. at 9 (cleaned up). Indeed, the Eighth Amendment excludes from constitutional protection "*de minimis* uses of physical force" that don't offend "contemporary standards of decency." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (cleaned up). That said, although "[t]he extent of injury may . . . provide some indication of the amount of force applied," "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 37–38. An excessive-force claim therefore doesn't fail simply because the prisoner's injuries were minor.

The subjective element asks *why* the officer used force. The prisoner must allege "more than [an] ordinary lack of due care for [his] interests or safety." *Whitley*, 475 U.S. at 319 (cleaned up). He must instead show that the officer applied force "maliciously and sadistically to cause harm," rather than "in a good faith effort to maintain or restore discipline." *Campbell v. Sikes*, 169 F.3d 1353, 1374–75 (11th Cir. 1999) (cleaned up). In drawing that distinction, courts consider five factors:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

*Id.* at 1375 (the "*Campbell* factors") (cleaned up) (first quoting *Whitley*, 475 U.S. at 321; and then citing *Hudson*, 503 U.S. at 7). Finally, "[a]s with any other claim brought under § 1983, to succeed, the inmate must demonstrate a causal connection between the prison official's conduct and the Eighth Amendment violation." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citation omitted).

Dellano satisfies both Eighth Amendment elements and § 1983's causation requirement. Starting with the objective prong, Dellano describes a "severe beating" that caused "severe swelling of [his] face and head," "minor lacerations," a "split upper lip," and "cuts in the forehead[.]" SAC at 8, 10. He also alleges psychological trauma "so severe" that he "seriously considered harming himself and others" and had to be placed in a transitional care unit. *Id.* at 10. Those injuries plausibly show that Biem and Robinson applied more than *de minimis* force. *See, e.g., Jones v. Schwarz*, 2021 WL 1201675, at *14 (N.D. Fla. Feb. 16, 2021) (Frank, Mag. J.) (recognizing that "[i]njuries which cause bleeding, swelling, cuts, and bruising can be considered more than *de minimis*"), *report and recommendation adopted*, 2021 WL 1196463 (N.D. Fla. Mar. 29, 2021) (Rodgers, J.); *cf. Benton v. Rousseau*, 940 F. Supp. 2d 1370, 1378 (M.D. Fla. 2013) (Antoon, J.) ("Benton's injuries include headaches and facial scars. Benton also testified that he experiences numbness in his side, which did not occur until he was beaten and kicked. Benton's injuries, although perhaps not serious, amount to more than *de minimis* injuries." (citations omitted)).

As for the subjective element, at this early stage of the case, the *Campbell* factors support an inference of malicious intent. *First*, as to the extent of his injuries, we've already said that his allegations of suffering "lacerations," a "split upper lip," cuts on his forehead, and "severe swelling" are serious. SAC at 10. *Second*, Dellano says that the attack was "[u]nprovoked by any actions of the Plaintiff," suggesting that there wasn't a serious need for the application of force. *Id.* at 4. *Third*, because the officers allegedly acted without provocation, the relationship between the need for force and the amount of force used was grossly disproportionate: Biem and Robinson allegedly "beat [Dellano's] . . . head and body," "kicking and stomping" him with "their booted feet as weapons"—all without provocation. *Id.* at 4–5. *Fourth*, none of Dellano's allegations suggest that "any efforts [were] made to temper the severity of [the] forceful response[.]" *Campbell*, 169 F.3d at 1375 (cleaned up). Just the opposite: Dellano says that Biem and Robinson acted "with the sole intent of inflicting as much pain

and suffering upon [him] as possible." SAC at 4. And *fifth*, as to the extent of the threat to the safety of staff and inmates, Dellano's claim that the attack was "[u]nprovoked" implies that he posed no threat at all. *Ibid.* When these allegations are taken as true, as we must do at this stage of the case, Dellano's allegations plausibly show that Biem and Robinson applied force "maliciously and sadistically to cause harm," rather than in a good-faith effort to restore discipline. *Campbell*, 169 F.3d at 1374–75.

Lastly, Dellano has done enough to plead the element of causation. Although he "could not determine whether the officers exchanged places," he nevertheless ties both Biem and Robinson to the attack by pleading that "both officers" beat him "severely without any provocation." *Id.* at 5; *see also id.* at 8. Dellano's excessive-force claims against Biem and Robinson may therefore **PROCEED** to service.

### b.      Food Deprivation

Next, Dellano says that Clayton created unconstitutional conditions when he deprived Dellano of food for roughly "two . . . weeks" while taunting him with his "food bag." SAC at 5–6. A conditions-of-confinement claim—as with all Eighth Amendment claims—includes both an objective and a subjective component. To satisfy the objective component, the prisoner must allege a deprivation that is "sufficiently serious," meaning one that denies him "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (cleaned up). Prison officials must, for example, "ensure that inmates receive adequate food, clothing, shelter, and medical care[.]" *Id.* at 832 (cleaned up). But "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). After all, some "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (cleaned up). The subjective component, in turn, requires deliberate indifference, meaning that the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Put differently, the official must be

"actually, subjectively aware that his own conduct caused a substantial risk of serious harm" to the prisoner. *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (cleaned up).

We think Dellano has stated a plausible conditions-of-confinement claim against Clayton. As to the objective element, Dellano says that, for about "two . . . weeks" after the beating, he was "subjected to food deprivation" because Clayton would "den[y] [him his] RDP bag."[1] SAC at 7; *see also id.* at 9. That's enough to show a sustained deprivation of "reasonably adequate food[.]" *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985); *see, e.g.*, *Dearman v. Woodson*, 429 F.2d 1288, 1289 (10th Cir. 1970) (finding that a prisoner stated a plausible Eighth Amendment violation where he alleged that officers "refused to provide food for him during a period of [fifty-and-a-half] hours"); *Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1083 (5th Cir. 1991) (finding that a prisoner's claim that officers "continuously deprived [him] of food [for twelve days] present[ed] a set of facts that may entitle him to relief" (citations omitted)).

As to the subjective component, Clayton's *own* alleged words and acts sufficiently show his actual knowledge. Dellano says that Clayton came to his cell "to taunt and harass" him; asked Dellano, "[A]re you hungry?" while holding up his "RDP bag"; and then "le[ft] with [his] food bag." SAC at 9. We think that a prison official who consciously displays and removes an inmate's food while asking

---

[1] Dellano appears to use "RDP" as shorthand for the Religious Diet Program administered by the Florida Department of Corrections ("FDOC"). *See Religious Diet Program—Certified Food Option Menu FY 2025–2026*, FLA. DEP'T OF CORR., https://www.fdc.myflorida.com/content/download/44473 /file/CFO%20Menu%202025-2026.pdf (last visited July 28, 2026) (identifying the FDOC's "Religious Diet Program" and listing the foods provided through its certified-food option). We take judicial notice of this information, which is publicly available on FDOC's official website. *See* FED. R. EVID. 201(b)(2); *see also Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, 2017 WL 3503371, at *7 (S.D. Fla. Aug. 15, 2017) (taking judicial notice of information "public[ly] available from an official government website" (citations omitted)).

It's true that "[t]he Eighth Amendment does not mandate meals that match inmates' dietary preferences—even when those preferences are dictated by religious beliefs." *Sumrall v. Ga. Dep't of Corr.*, 154 F.4th 1304, 1314 (11th Cir. 2025) (citations omitted). Liberally construed, though, the SAC alleges that the RDP bag was *the* food available to Dellano and not just a preferred religious meal. After all, Dellano categorically refers to Clayton's conduct as "*food* deprivation" and claims that Clayton took away his "*food* bag" after teasing him for being hungry. SAC at 7, 9 (emphases added).

whether he's hungry plausibly knows that his "own conduct" is depriving the inmate of food. *Wade*, 106 F.4th at 1262. And because Dellano identifies Clayton as the person who repeatedly removed the bag, he's plainly alleged the element of causation as to Clayton. So, Dellano's food-deprivation claim against Clayton may **PROCEED** to service.

### c. Deliberate Indifference

Dellano also claims that Biem and Robinson acted with deliberate indifference to his medical needs when they "withh[e]ld [Dellano's] blood[-]pressure medication" for almost two weeks. SAC at 9. Prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In the Eleventh Circuit, a plaintiff asserting an Eighth Amendment claim of medical deliberate indifference must show, *first*, that "the deprivation he allegedly suffered was 'objectively, sufficiently serious,'" which requires him to establish an "objectively serious medical need," *Wade*, 106 F.4th at 1255–56 (quoting *Farmer*, 511 U.S. at 834, 839), and *second*, as we've explained, that the defendant acted with "subjective recklessness[,]" meaning that "the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff," *id.* at 1262. But a defendant "cannot be found liable . . . if he responded reasonably to the risk." *Ibid.* (cleaned up).

An "inadvertent failure to provide adequate medical care" doesn't violate the Eighth Amendment. *Estelle*, 429 U.S. at 105–06. But a prison official acts with deliberate indifference when he "intentionally den[ies] or delay[s] access to medical care" or "intentionally interfere[s] with the treatment once prescribed." *Id.* at 104–05. That said, not every delay will do. Whether a delay violates the Constitution depends on "the reason for the delay and the nature of the medical need." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). So, a non-medical or otherwise unjustified delay in treating a serious medical need may establish deliberate indifference. *See, e.g., Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) ("[A]n unexplained delay of hours in treating a serious injury states a prima

8

facie case of deliberate indifference." (collecting cases)). And the same is true when an official *knows* that an inmate needs serious medical care but categorically "fails or refuses to obtain medical treatment" for him. *McElligott*, 182 F.3d at 1255.

Dellano has met both prongs of his medical-deliberate-indifference claims against Biem and Robinson. He has shown an objectively serious need because Dellano says that he was receiving "blood[-]pressure medication" before Biem and Robinson were ordered to "withhold" it from him between May 9 and May 22, 2023. SAC at 6, 9. A serious medical need includes one "that has been diagnosed by a physician as mandating treatment[.]" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (cleaned up). Given that Dellano was prescribed blood-pressure medication, we can infer that a medical provider diagnosed Dellano with high blood pressure and thought he needed medication. Plus, the symptoms Dellano attributes to the interruption—"severe headaches, disorientation, loss of sense of direction, mental confusion, and impaired awareness"—indicate that the deprivation *was* sufficiently serious. SAC at 6; *see also Butler v. Pinerio*, 2023 WL 2813627, at *4 (S.D. Ga. Apr. 6, 2023) ("[H]ypertension qualifies as a serious medical need."), *report and recommendation adopted*, 2023 WL 4188043 (S.D. Ga. June 26, 2023).

Dellano has also pled subjective recklessness. He says that Binsse expressly "ordered . . . Biem and Robinson to withhold" medication they *knew* was for Dellano,[2] and that they did so for two weeks. SAC at 9. In other words, this wasn't a case of a single missed dose, and nothing suggests that Biem and Robinson had any medical reason for (allegedly) withholding the medication. When we accept these allegations as true, as we must at this early stage of the proceedings, the Defendants' conduct amounts to an intentional, prolonged, and facially unjustified interference with an existing course of treatment. In other words, Dellano has plausibly alleged that Biem and Robinson were subjectively

---

[2] We later analyze Dellano's medical-deliberate-indifference claim against Binsse under what we've liberally construed as a supervisory-liability theory. *See* SAC at 9.

aware that their conduct exposed Dellano to a substantial risk of serious harm. *See, e.g., Carter v. Broward Cnty. Sheriff Off.*, 710 F. App'x 387, 391 (11th Cir. 2017) (finding that a prisoner had plausibly alleged deliberate indifference where prison officials "fail[ed] to ensure that his medication was distributed as prescribed" despite being "subjectively aware" of the prisoner's need for the medication); *see also Deffendall v. Stinson*, 2023 WL 8170937, at \*14 (S.D. Fla. Nov. 24, 2023) (Altman, J.) (finding that "[t]he failure to provide effective pain medication—here, the acetaminophen in addition to the ibuprofen— for nearly a week [after a surgery] could constitute deliberate indifference" (citation omitted)).

Dellano also expressly alleges causation. After all, he says that Biem and Robinson's deliberate indifference "caus[ed]" his "severe headaches, disorientation, loss of sense of direction, mental confusion, and impaired awareness." SAC at 9. So, his medical-deliberate-indifference claims against Biem and Robinson may **PROCEED** to service.

### d.      Failure to Protect

Dellano can't proceed, however, on his failure-to-protect claims against all four Defendants. The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (cleaned up). This includes a duty "to protect prisoners from violence at the hands of other prisoners," since "gratuitously allowing the beating . . . of one prisoner by another serves no legitimate penological objective." *Id.* at 833 (cleaned up). Still, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials." *Id.* at 834.

As with all deliberate-indifference claims, a prisoner asserting a failure-to-protect claim must first allege "a substantial risk of serious harm[.]" *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (citation omitted). Although "isolated attacks by one prisoner or another may not constitute cruel and unusual punishment," an "excessive risk of inmate-on-inmate violence" may create the required substantial risk of serious harm. *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (cleaned up)

("[C]onfinement in a prison where violence and terror reign is actionable."). Next, the prisoner must show "the defendants' deliberate indifference to that risk," *Brooks*, 800 F.3d at 1301, which, as we've explained, means that each defendant actually knew his "own conduct" exposed the prisoner to a substantial risk of serious harm, *Wade*, 106 F.4th at 1262. Lastly, the prisoner must identify "a causal connection between the defendants' conduct and the Eighth Amendment violation." *Brooks*, 800 F.3d at 1301.

Liberally construed, the SAC advances two failure-to-protect theories against the Defendants. *First*, Dellano claims that the Defendants "fail[ed] to protect [him] from being sexually assaulted" by an inmate on April 17, 2023. SAC at 9. *Second*, he alleges that one of the Defendants "revealed" "confidential information" about his confinement status "to other inmates," which exposed him to future violence. *Id.* at 7. Neither theory plausibly alleges the Defendants' deliberate indifference.

As for the first theory, Dellano claims that he was "sexually assaulted at the hands of a fellow inmate," *id.* at 4—which we agree is a serious harm. But he doesn't allege that, *before* the assault, any named Defendant *knew* that he faced a substantial risk of sexual violence from another inmate. Instead, he says only that, *after* the assault, he "filed, with prison officials at FDC Martin C.I., a PREA Complaint" and was "[s]ubsequently . . . placed in confinement for his [own] protection." *Ibid.* And every act Dellano attributes to a named Defendant occurred *after* the assault. *See id.* at 4–6 (alleging that, after he was assaulted, Biem and Robinson "entered [his] confinement cell," Clayton withheld his "food bag," and Binsse "ordered officers Biem and Robinson to withhold [his] blood[-]pressure medication"). These allegations thus describe only *post*-assault conduct; they *don't* show that any Defendant knew of, consciously disregarded, or caused a substantial risk of harm *before* the assault occurred.

The second theory likewise falls short. Dellano says that "confidential information regarding [his] confinement status was revealed to other inmates," which "placed [him] in the way of very serious

11

physical harm." SAC at 7. But he doesn't describe that "confidential information," the "other inmates" who received it, any threat they made, or any injury he may have suffered as a result. *Ibid.* Without this information, he's failed to explain *how* any Defendant knew that he "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *see also Arias v. Perez*, 2017 WL 11516377, at *8 (S.D. Fla. Mar. 14, 2017) (White, Mag. J.) (finding that the plaintiff "fail[ed] to state an Eighth Amendment claim based on a failure to protect" where he alleged "only in the vaguest of terms that the FDOC ha[d] failed to protect his life" but "ma[de] no specific allegations whatsoever regarding what, if anything, ever happened to him, on what dates, or whether any prison official acted with deliberate indifference to a substantial risk of serious harm"). We therefore **DISMISS** *with prejudice* both of Dellano's failure-to-protect claims.

## II.     The First Amendment Retaliation Claims

Dellano next alleges that Biem, Robinson, and Clayton punished him for filing his PREA complaint.[3] *See* SAC at 9. A prisoner states a First Amendment retaliation claim by alleging that: (1) "his speech was constitutionally protected"; (2) he "suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech"; and (3) "there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation omitted). A prisoner's good-faith complaint about prison conditions constitutes protected speech. *See Smart v. England*, 93 F.4th 1283, 1289 (11th Cir. 2024) ("A prisoner may state a claim under the First Amendment when he alleges that he was punished for filing a grievance concerning the conditions of his imprisonment." (cleaned up)). And a plaintiff adequately alleges causation when his facts plausibly show that the official was "subjectively motivated" by the protected complaint. *Smith*, 532 F.3d at 1278.

---

[3] Dellano alleges that Binsse retaliated against him, too—a claim we'll analyze under a supervisory-liability theory.

Dellano has plausibly alleged all three elements of his retaliation claims against Biem, Robinson, and Clayton. *First*, he says that he "filed, with prison officials at FDC Martin C.I., a PREA Complaint" after another inmate sexually assaulted him. SAC at 4–5. His report on inmate sexual assault was therefore a complaint about prison conditions. Indeed, he alleges that his PREA complaint resulted in an officer's "dismissal[.]" *Id.* at 9. *Second*, it's plausible to assume that the alleged conduct of these Defendants—*viz.*, Biem and Robinson severely beating Dellano and withholding his blood-pressure medication, while Clayton deprived him of food for nearly two weeks—would deter an ordinary prisoner from filing another grievance. *See, e.g.*, *Abreu v. Lipka*, 778 F. App'x 28, 33 (2d Cir. 2019) ("[A] severe beating, false misbehavior reports, or the withholding of medication could constitute sufficiently adverse actions that would deter a prisoner of ordinary firmness from exercising his rights." (cleaned up)). And Dellano even suggests that he "does not feel safe using the grievance process or approaching a person in authority for assistance for fear of reprisals and retaliation." SAC at 9. *Third*, Dellano has done enough to plead the element of causation. He, after all, says that these Defendants acted "in retaliation against him for filing a PREA complaint which resulted in the dismissal of one of their co-workers," *ibid.*, and that he filed that complaint *after* the assault but *before* their retaliatory conduct, *see id.* at 4–7. That's *just* enough, at this early stage of the case, to support the inference that Biem, Robinson, and Clayton were subjectively motivated to retaliate against Dellano. We'll therefore allow the retaliation claims against those three Defendants to **PROCEED** to service.

### III.   Supervisory Liability

Finally, we'll address Dellano's supervisory-liability claims against Binsse and Clayton. Dellano says that Binsse and Clayton "had or should have had constructive knowledge of the actions of the officers under [their] supervision"—specifically, Biem and Robinson—so "[t]he doctrine of *respondeat superior* is applicable" here. *Id.* at 9. From what we've (liberally) gleaned from the SAC, we think we can discern two sets of supervisory-liability claims: (1) claims against Binsse for Biem and Robinson's

excessive force, medical deliberate indifference, and retaliation; and (2) claims against Clayton for Biem's and Robinson's excessive force and medical deliberate indifference.[4]

As an initial matter, "supervisory officials are not vicariously liable under § 1983 for the unconstitutional acts of their subordinates." *Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022) (cleaned up). A supervisor is liable only when he either "personally participates in the alleged constitutional violation," or when "there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (cleaned up). A plaintiff may establish that causal connection by alleging that: (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; (2) "a supervisor's custom or policy results in deliberate indifference to constitutional rights"; (3) "the supervisor directed the subordinates to act unlawfully"; or (4) the supervisor "knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1048 (11th Cir. 2014). "The standard for supervisory liability is extremely rigorous." *Powell v. Sheriff, Fulton Cnty., Ga.*, 511 F. App'x 957, 961 (11th Cir. 2013) (cleaned up).

Dellano has plausibly stated supervisory claims against Binsse for medical deliberate indifference and retaliation. Starting with deliberate indifference, Dellano alleges that Binsse was the "Officer [i]n Charge" during Biem and Robinson's shift, SAC at 9, and that Binsse "ordered . . . Biem and Robinson" to withhold his blood-pressure medication, *see also id.* at 5–6. That's enough, at this stage of the case, to plead that Binsse was causally connected to that violation. *See Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) ("A causal connection can also be established by facts which

---

[4] Because Dellano alleges that Clayton *himself* created unconstitutional conditions and retaliated against Dellano by depriving him of food for two weeks (while not acting as a supervisor), we've treated those allegations as direct, non-supervisory claims and won't revisit them here.

support an inference that the supervisor *directed the subordinates* to act unlawfully[.]" (citing *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1561 (11th Cir. 1993) (emphasis added))).

The retaliation claim against Binsse clears that bar too. Again, according to Dellano, Binsse *ordered* Biem and Robinson to withhold Dellano's blood-pressure medication—conduct we've already found sufficient to deter a reasonable prisoner from complaining about prison conditions. And Dellano says that *all* the Defendants—including Binsse—"retaliated against him for filing a PREA complaint" and getting "one of their co-workers" dismissed. SAC at 5–6. Together, these facts plausibly show that Binsse was personally involved in—or, at the very least, causally connected to— the retaliation against Dellano. For these reasons, Dellano's supervisory-liability claims against Binsse for medical deliberate indifference and retaliation may **PROCEED** to service.

We come out the other way, however, on Dellano's other supervisory-liability claims against Binsse and Clayton. To begin with, Dellano hasn't given us *any* facts showing that Binsse and Clayton *personally* participated in Biem's and Robinson's excessive force—or that Clayton was *personally* involved in their medical deliberate indifference. At this point, Dellano has demonstrated that, when he means to allege personal involvement, he does so directly—and he hasn't done so here.

Dellano likewise fails to establish any of the four causal connections for supervisory liability as to these other violations. *See Keith*, 749 F.3d at 1048. *First*, he doesn't outline the kind of history of widespread abuse that would've put Binsse or Clayton on notice of Biem's and Robinson's excessive force. Nor does he identify any history of abuse that would've put Clayton on notice of their deliberate indifference to inmates' medical needs. *Second*, Dellano doesn't point to a single custom or policy that might have caused these harms. *Third*, the SAC includes no facts suggesting that Binsse or Clayton directed Biem and Robinson to attack Dellano, or that Clayton—along with Binsse—directed them to withhold Dellano's blood-pressure medication. *Fourth*, Dellano doesn't allege that Binsse and Clayton *knew* that Biem and Robinson would attack Dellano—or that Clayton *knew* they'd withhold

15

Dellano's medication—and he doesn't suggest that, despite this knowledge, Binsse and Clayton nevertheless failed to stop them. *Ibid.* As to these claims, all Dellano says is that Clayton and Binsse "had or should have had constructive knowledge" of their subordinates' conduct. *Id.* at 5–6. But he gives no facts for that conclusion at all. That's not enough to state a plausible supervisory claim. *See Paul-Noel v. Miami-Dade Cnty.*, 2026 WL 1970883, at *17 (S.D. Fla. July 8, 2026) (Altman, J.) (requiring the plaintiff to allege facts "with particularity" showing that a supervisor either "personally participated in a plausible constitutional violation" or that "a causal connection existed between her actions and [her supervisee's] alleged misconduct" (emphasis omitted)). We therefore **DISMISS** *without prejudice* the rest of Dellano's supervisory-liability claims against Binsse and Clayton for failure to state a claim.

*     *     *

One last thing. We're dismissing the failure-to-protect claims *with prejudice* and *without* leave to amend. On May 8, 2025, U.S. District Judge Robin Rosenberg screened Dellano's initial Civil Rights Complaint under 42 U.S.C. § 1983. *See generally* Screening Order [ECF No. 6]. After reviewing that initial complaint, Judge Rosenberg dismissed Dellano's failure-to-protect allegations after finding that he had "not stated a cognizable § 1983 claim." *Id.* at 7. This is now Dellano's second attempt to advance those same claims.[5] So, we won't give Dellano another chance to fix those claims. We've already given him one such opportunity, and the law doesn't require us to give him another. *See, e.g., Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) ("Because Cornelius already had been given an opportunity to correct his pleadings, the judge was not required to give him another chance."); *Rodriguez v. Scott*, 775 F. App'x 599, 602 (11th Cir. 2019) (affirming a district court's with-prejudice dismissal of a prisoner's amended complaint where the amended complaint "still suffered

---

[5] Once the case was reassigned to us, we dismissed Dellano's First Amended Complaint [ECF No. 7] because he "didn't 'substantially follow' the form this Court has prescribed for civil-rights complaints." Order Requiring Second Amended Complaint [ECF No. 15] at 1 (citing Local Rule 88.2).

16

from the same flaws that the [court] identified in the first pleading and warned [the prisoner] to correct").

The supervisory-liability claims, on the other hand, we dismiss *without prejudice* and *with* leave to amend because this is the first time Dellano has been told about the deficiencies with those claims. *See Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) ("When a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the [claim] with prejudice." (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991))); *see also Horn v. Est. of Camacho*, 817 F. App'x 872, 874 (11th Cir. 2020) ("[A] district court must advise a *pro se* plaintiff of the deficiencies in his complaint and give him an opportunity to amend.").

If Dellano files an amended complaint, he must include *all* his claims against *all* the Defendants. The Amended Complaint must be no longer than 20 double-spaced pages, and Dellano must ensure that his factual allegations are properly pled. In other words, his "claims or defenses [must appear] in numbered paragraphs, each limited as far as practicable to a single set of circumstances," FED. R. CIV. P. 10(b), and the facts supporting these claims must be presented in a "short and plain statement . . . showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2).

\*      \*      \*

Having screened the Second Amended Complaint [ECF No. 16] under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, we therefore **ORDER AND ADJUDGE** as follows:

1.      Dellano's Eighth Amendment excessive-force claims against Officer M. Biem and Officer B. Robinson in their individual capacities, his Eighth Amendment food-deprivation claim against Sergeant J. Clayton in his individual capacity, his Eighth Amendment medical-deliberate-indifference claims against Officer M. Biem, Officer B. Robinson, and Captain J. Binsse in their individual capacities, and his First Amendment retaliation claims against Officer M. Biem, Officer B.

17

Robinson, Sergeant J. Clayton, and Captain J. Binsse in their individual capacities shall **PROCEED** to service.

2.    Dellano's failure-to-protect claims are **DISMISSED** *with prejudice. See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

3.    Dellano's remaining supervisory-liability claims are **DISMISSED** *without prejudice. See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

4.    By **August 26, 2026**, Dellano shall either: (a) file a third amended complaint in accordance with the instructions contained in this Order; or (b) file a notice indicating that he wishes to proceed to service with the SAC, as narrowed by this Order. If he files a third amended complaint, it must be no longer than 20 double-spaced pages, must be signed under the penalty of perjury, and must contain a short and plain statement of his claims for relief, a basis for federal jurisdiction, and a demand for judgment. The third amended complaint must also include a separate paragraph for each Defendant, explaining what that Defendant did wrong, and it must present all allegations in numbered paragraphs. The Clerk is **DIRECTED** to attach a copy of this Court's form titled "Complaint for Violation of Civil Rights (Prisoner)."

5.    The third amended complaint must be labeled "Third Amended Complaint" and must show the case number referenced above, so that it will be filed in this case. The third amended complaint will be the sole operative pleading in this case, and only the claims listed in the third amended complaint will be addressed. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) ("[A]n amended complaint supersedes the initial complaint and becomes the operative pleading in the case."). Dellano may not incorporate by reference any past claims. *See* S.D. FLA. L.R. 5.1.

6.    If Dellano doesn't file an amended complaint by **August 26, 2026**, we'll direct the U.S. Marshal's Service to serve the Second Amended Complaint [ECF No. 16] on Biem, Robinson, Clayton, and Binsse, since Dellano is proceeding *in forma pauperis* [ECF No. 4].

7.      This case shall remain administratively **CLOSED**. Any party may move to reopen the case once the Defendants have been served.

**DONE AND ORDERED** in the Southern District of Florida on July 30, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**


cc:     Rolando Dellano, *pro se*